# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS

JOHNSON COUNTY,

*Plaintiff*

v.

PURDUE PHARMA L.P.; PURDUE
PHARMA INC.; THE PURDUE
FREDERICK COMPANY; PURDUE
PHARMACEUTICALS L.P.;
CEPHALON, INC.; TEVA
PHARMACEUTICAL INDUSTRIES,
LTD.; TEVA PHARMACEUTICALS
USA, INC.; JANSSEN
PHARMACEUTICALS, INC.;
JOHNSON & JOHNSON; ORTHO-
MCNEIL-JANSSEN
PHARMACEUTICALS, INC. N/K/A
JANSSEN PHARMACEUTICALS,
INC.; ENDO HEALTH SOLUTIONS
INC.; ENDO PHARMACEUTICALS
INC.; ABBOTT LABORATORIES;
KNOLL PHARMACEUTICAL
COMPANY; ALLERGAN PLC;
ACTAVIS PLC; WATSON
PHARMACEUTICALS, INC.;
ACTAVIS, INC.; ALLERGAN
FINANCE, LLC; ALLERGAN PLC
F/K/A ACTAVIS, INC. F/K/A WATSON
PHARMACEUTICALS, INC.;
WATSON LABORATORIES, INC.;
ACTAVIS PHARMA, INC. F/K/A
ACTAVIS, INC.; WATSON PHARMA,
INC.; ACTAVIS LLC; ACTAVIS
SALES LLC; ALLERGAN USA INC.;
INSYS THERAPEUTICS; INSYS
MANUFACTURING LLC;
MCKESSON CORPORATION;
MCKESSON MEDICAL-SURGICAL
INC.; CARDINAL HEALTH, INC.;

Civil Action No. 4:19-cv-637

6810291.1

CARDINAL HEALTH 110 LLC;
CARDINAL HEALTH 200 LLC;
C8RDINAL HEALTH 414 LLC;
AMERISOURCEBERGEN DRUG
CORPORATION; MALLINCKRODT
PLC; ABBVIE, INC.; CVS HEALTH
CORPORATION; WALGREENS
BOOTS ALLIANCE, INC. A/K/A
WALGREEN CO.; WAL-MART
STORES, INC.; JOHN TAI DANG,
M.D.; DANG MEDICAL CLINIC, P.A.;
DANG OCCUPATIONAL
CONSULTANTS, INC.,

*Defendants*

## NOTICE OF REMOVAL

In accordance with 28 U.S.C. §§ 1332, 1441, 1446, and 1453, and with full reservation of defenses, including but not limited to its continuing objection to personal jurisdiction, Defendant CVS Health Corporation ("CVS") gives notice of the removal of this action originally filed in the District Court for Johnson County, Texas and now pending in the Texas Opioid MDL in the 152d Judicial District Court of Harris County, Texas, under Cause No. 2018-63587, to the United States District Court for the Southern District of Texas. In support of removal, CVS provides the required "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a); *see also Dart Cherokee Basin Operating Co., LLC* v. *Owens*, 135 S. Ct. 547, 553 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure.").

6810291.1

## I.   Nature of Removed Action

1.      On or about December 18, 2018, Plaintiff, Johnson County, Texas, filed a Petition in the Circuit Court for Johnson County, Texas, for claims relating to prescription opioid medications. Plaintiff brings claims for public nuisance and Texas common law nuisance (Count I); civil conspiracy (Count II); and negligence (Count III). Plaintiff seeks damages and equitable relief for alleged injuries to itself and its residents.

2.      This action is one of more than 1,900 opioid lawsuits filed by government entities against manufacturers and distributors of prescription opioid medications. Plaintiffs in these cases allege that Defendants are liable for the economic and non-economic injuries suffered by resident doctors, health care payors, and opioid-addicted individuals, as well as for the costs incurred in addressing the opioid epidemic.

3.      On December 5, 2017, the Judicial Panel on Multidistrict Litigation ("JPML") created a Multidistrict Litigation in the Northern District of Ohio ("Opiate MDL") for cases like this one—cases in which "cities, counties and states . . . allege that: (1) manufacturers of prescription opioid medications overstated the benefits and downplayed the risks of the use of their opioids and aggressively marketed . . . these drugs to physicians, and/or (2) distributors failed to monitor . . . and report suspicious orders of prescription opiates." *In re Nat'l Prescription Opiate Litig.*, MDL No. 2804, Dkt. No. 1 (Dec. 12, 2017 Transfer Order) (Exhibit 1). To date, more than 1,600 actions have been transferred to the Opiate MDL.

6810291.1

4.      The allegations set forth in Plaintiff's Complaint resemble those asserted in nearly all of the complaints filed in the Opiate MDL. The bulk of the allegations in these complaints have been levied by cities and counties against the manufacturers for alleged deceptive marketing of prescription opioids from approximately the 1990s to present. In fact, the allegations are nearly identical to those asserted in *The County of Summit, Ohio, et. al.* v. *Purdue Pharma L.P., et al.*, MDL No. 17-md-2804, Case No. 1:18-op-45090, a bellwether case that is currently being litigated in the Opiate MDL.

5.      The thrust of Plaintiff's Complaint is that the "Corporate Defendants"—which is defined to include pharmaceutical drug manufacturers, distributors, and retail pharmacies—"and their affiliates successfully created a market for [opioid] products by identifying and expanding new markets for these products; relying on false science . . . enlisting either unwitting or complicit health providers as their advocates and accomplices; and saturating the direct to consumer market with false advertising, promotions, and reassuring messages, all of which were calculated to cause and did cause consumers in Johnson County to seek out these medications." Compl. at ¶ 48.

6.      As to the "Individual Defendants," Plaintiff alleges that they "created a public nuisance through the issuing of prescriptions outside the usual course of practice and for other than a legitimate medical purpose." Compl. at ¶ 74. "Such dispensing," Plaintiff alleges, "was performed primarily for monetary gain and provides ample evidence of a conspiracy to profit from a known public nuisance." *Id*.

6810291.1

7.     Based on these allegations, Plaintiff claims a litany of injuries to itself and its residents stemming from the alleged abuse of addictive opioids by residents in Plaintiff's County and the State of Texas. These include alleged damages in the form of expenses incurred in providing health, social, and law enforcement services related to opioid addiction and death, as well as economic losses on behalf of their citizens.  Compl. at ¶¶ 4, 54, 57, 61, 82-83, and 94-96.

## II.    This Action Is Removable Under CAFA

8.     Plaintiff's lawsuit is removable under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453(b), because: (1) litigation of this case in federal court raises factual and legal issues of national importance that would further CAFA's overall purpose; and (2) each of CAFA's statutory requirements is satisfied. This Court must assess jurisdiction under CAFA at the time of removal.  28 U.S.C. § 1332(d); *see Louisiana* v. *American Nat. Property Cas. Co.*, 746 F.3d 633 (5th Cir. 2014) ("Jurisdictional facts are determined at the time of removal, not by subsequent events.").

### A.    This Is An Interstate Case of National Importance

9.     First, this lawsuit is precisely the type of case that Congress intended to be litigated in federal court. Through CAFA, Congress expressed its intent "to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34; *see also Standard Fire Ins. Co.* v. *Knowles*, 568 U.S. 588, 595 (2013) ("CAFA's primary objective" is to "ensur[e] Federal court consideration of

interstate cases of national importance.") (citations and quotes omitted); *accord Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554.

10.     This case is one of hundreds of cases filed across the country in which government entities have sued prescription opioid manufacturers, distributors, and others for harms arising from the abuse of these drugs. The Opiate MDL alone has more than 1,900 cases that are part of a national opioid "crisis" and epidemic allegedly besieging certain counties in Texas and the rest of the country. Plaintiff has scripted its Complaint from complaints in cases already being litigated in the Opiate MDL. For example, Plaintiff asserts that its claims touch upon issues of national importance. *See, e.g.*, Compl. ¶ 53 ("Violent and property crime associated with drug diversion and abuse has increased in all regions of the United States over the past 5 years, according to the National Drug Intelligence Center (NDIC) National Drug Threat Survey (NDTS)."); *id.* at ¶ 51 ("[D]rug overdose and opioid-related deaths continue to increase in the United States."); *id.* (asserting that drug overdose is the "leading cause of accidental death in the US, with 52, 404 lethal drug overdoses in 2015); *id.* at ¶ 53 ("On a broader scale, the [CDC] estimates that the total 'economic burden' of prescription opioid misuse alone in the United States is $78.5 billion a year . . . ."); *id.* at ¶ 62 ("While opioid use proliferated, and its insidious and devastating effects were hoisted upon the citizens of Johnson County and the Nation . . . ."); and *id.* at ¶ 60 ("Across the Nation, the next generation of leaders, workers, and parents have succumbed to a horrific increase in the risk of deaths . . . .").

6810291.1

11.     As Plaintiff avers, the issues in this case implicate factual and legal issues that span well beyond State lines and, as a result, should be litigated in federal court along with the other lawsuits in the Opiate MDL. In denying remand in another opioid case in the diversity context, the U.S. District Court for the Southern District of West Virginia observed the following:

> Here, where the opioid epidemic is pervasive and egregious, there is at least a possibility of prejudice to the defendants at the hands of a jury drawn exclusively from the very county that is the plaintiff in this suit. A federal jury casts a wider net and is drawn from a division that comprises several counties. All may have an opioid problem, but not one that is specific to the plaintiff county.

*City of Huntington* v. *AmerisourceBergen Drug Corp.*, 2017 WL 3317300, at *2 (S.D.W. Va. Aug. 3, 2017).

12.     In short, jurisdiction in this matter is consistent with and promotes the purpose of CAFA.

### B.     CAFA's Statutory Requirements Are Met

13.     To be removed under CAFA, this suit must qualify as a class action, there must be 100 members of the proposed class, the amount in controversy must exceed $5 million, and there must be minimum diversity between the parties. 28 U.S.C. § 1332(d); 28 U.S.C. § 1453. All these requirements are met here.

### i.     This Case Essentially Is a Class Action

14.     CAFA applies here because this case essentially is a class action. While Plaintiff has not alleged a putative class action on the face of its Complaint, in reality, this lawsuit is "in substance a class action." *Addison Automatics, Inc.* v. *Hartford Cas.*

6810291.1

*Ins. Co.*, 731 F.3d 740, 742 (7th Cir. 2013); *see also Badeaux* v. *Goodell,* 358 F. Supp. 3d 562 (E.D. La., Jan. 31, 2019) ("Plaintiffs' state court petition unmistakably resembles a class action despite its omission of the words 'class action' . . . .").

15.    CAFA provides that "district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); *see also Robertson* v. *Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) (recognizing that CAFA jurisdiction exists when "there is minimal diversity and the *aggregate* amount in controversy exceeds $5 million") (emphasis added). CAFA "calls upon federal district court judges to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter that appears to be a class action in all but name." *W. Virginia ex rel. McGraw* v. *Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010) (holding defendant properly removed action brought by the State of West Virginia against Comcast under CAFA because subscribers were the real parties in interest); *see also Bullard* v. *Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008) ("[L]itigation counts as a class action if it is either filed as a representative suit or becomes a 'mass action' at any time.").

16.    CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar state statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."   28 U.S.C. § 1332(d)(1)(B).   Consistent with Congress's overall

objective in favoring federal diversity jurisdiction over class actions with interstate ramifications, "the definition of 'class action' is to be interpreted liberally.  Its application should not be confined solely to lawsuits that are labelled 'class actions' . . . . *Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.*"  S. Rep. No. 109-14, at 35 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 3, 34 (emphasis added).

17.    Thus, where a lawsuit "resembl[es] a class action" by asserting claims both individually and on behalf of others, CAFA removal has been found proper. *Badeaux*, 358 F. Supp. 3d at 567. Courts have refused to "prioritize a complaint's use of magic words over its factual allegations," and have held that CAFA jurisdiction exists even where the complaint "does not seek class certification" or "omits reference to" a state statute "analogous to Rule 23." *Williams* v. *Employers Mut. Cas. Co.*, 845 F.3d 891, 900–01 (8th Cir. 2017); *see also Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554 ("[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court"); *In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at \*7 (W.D. Tex., Sept. 30, 2015) ("Indeed, contrary to the general rule strictly construing the removal statute against jurisdiction . . . no 'antiremoval presumption attends cases invoking CAFA . . . .'") (quoting *Dart Cherokee*, 135 S. Ct. at 554); *Badeaux*, 358 F. Supp. 3d at 567 ("A lawsuit resembling a class action will not escape CAFA jurisdiction simply because it omits the words

6810291.1

'class action' or does not include the state rule or statute under which it proceeds as a class action.").

18.     Here, Plaintiff is acting as a representative for a class of residents who were allegedly harmed, either directly or indirectly, by Defendants' purported misconduct. Plaintiff alleges that Defendants have inflicted both economic and non-economic injuries on its individual residents. *E.g.,* Compl. at ¶ 54 (alleging that Defendants' conduct imposed a "huge healthcare burden on the county and its residents"); *id.* at ¶ 61 (noting that neonatal abstinence syndrome "poses a prohibitive financial burden on the residents of Johnson County"); *id.* ("[T]he costs of [neonatal abstinence syndrome] are likely to be borne by the citizens of Johnson County . . . ."); *id.* at ¶ 62 ("[O]pioid use proliferated, and its insidious and devastating effects were hoisted upon the citizens of Johnson County . . . ."); *id.* at ¶ 73 ("Defendants . . . now must answer to the Court and the citizens of Johnson County, Texas."); *id.* at ¶ 83 ("The conduct of Defendants has created a nuisance which has resulted in injuries, damages, and deaths that adversely affected the citizens of Johnson County.") (emphasis added); *id.* at ¶ 90 ("Dr. Dang is guilty of exploiting the opioid drug distribution system for profit, and at the expense of citizens of Johnson County."); *id.* at ¶ 92 ("Defendants acted in concert with one another, with . . . overt acts in furtherance of this goal, and damages to the citizens of Johnson County, Texas as a proximate result.").

19.     Plaintiff's alleged injuries derive from its residents' injuries and cannot be separated from those injuries. Plaintiff seeks to recover costs in providing law

enforcement, medical, and social services for opioid addiction, emergencies, and overdose deaths, all of which stem from its residents' alleged opioid abuse. *E.g.,* Compl. at ¶ 83. Any damages would be a calculation of aggregate damages resulting from individual instances of opioid addiction and death.

### ii.   CAFA's 100-Member Requirement Is Met

20.     The Complaint satisfies CAFA's 100-member requirement because the putative class consists of thousands of residents and at least hundreds alleged to be injured. *See* 28 U.S.C. § 1332(d)(5)(B); *see also* Compl. ¶¶ 54-57. In determining whether this requirement is met, United States District Courts in Texas have considered the number of people who may have been potentially affected by the defendant's alleged misconduct, rather than the number of people who have been actually affected by such conduct. *See, e.g.*, *Moore* v. *Payson Petroleum Grayson, LLC*, 2018 WL 3845193, *4 (N.D. Tex., Aug. 13, 2018) ("To show numerosity, a plaintiff must demonstrate 'some evidence' or a 'reasonable estimate' of the number of purported class members . . . ."); *Stephenson* v. *Standard Ins. Co.*, 2013 WL 3146977, at *7 (W.D. Tex., June, 18, 2013) (finding that a Plaintiffs allegation in her petition "that the proposed class members 'number in the tens to hundreds of thousands' and that the members are so numerous that joiner would be impracticable" was sufficient to satisfy CAFA's 100-member requirement).

21.     Here, the Complaint alleges that in Johnson County, "the rate of overdose deaths has increased from 4.1-6 per 100,000 in 1999 to <u>12.1-14 per 100,000 in 2015</u>." Compl. at ¶ 55 (emphasis in original). According to Plaintiff, "[o]f the more

than 33,000 opioid-related deaths in the United States in 2015, 2,588 were in Texas, including in Johnson County." *Id*. With respect to opioid prescriptions, Plaintiff asserts that "prescribing rates in Johnson County historically have been above average and as high as 90.9 prescriptions per 100 persons." *Id*. at ¶ 54. Consequently, the potential number of people who have been or may be affected thus well exceeds the 100-member requirement under CAFA.

### iii.   CAFA's Minimal Diversity Requirements Are Met

22.    There is minimal diversity between Plaintiff and Defendant. District courts have original jurisdiction of "any civil action in which the controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). CAFA eliminates the requirement of complete diversity. Instead, CAFA requires only minimal diversity—meaning that the parties are diverse if the plaintiff's citizenship differs from that of at least one defendant. 28 U.S.C. § 1332(d)(2)(A).

23.    For purposes of diversity jurisdiction, a political subdivision is a citizen of the state. *See Moor* v. *Alameda Cty.*, 411 U.S. 693, 717 (1973) ("[A] political subdivision of a State . . . is a citizen of the State for diversity purposes."). A corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1). For purposes of CAFA, the citizenship of any unincorporated association, such as limited partnerships and limited liability

companies, is also determined by the entity's State of incorporation and principal place of business. 28 U.S.C. § 1332(d)(10).

24.     Applying these principles, there is minimal diversity between the parties. Plaintiff Johnson County is a political subdivision of Texas. And many of the Defendants are citizens of States other than Texas. Compl. ¶¶ 5-47. To name a few:

a.     Defendants Endo Health Solutions Inc. and Endo Pharmaceuticals Inc. are both corporations organized under the laws of Delaware and both maintain their principal places of business in Malvern, Pennsylvania.  They are, accordingly, citizens of Delaware and Pennsylvania.

b.     Defendant Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware and maintains its principal place of business in Stamford, Connecticut.  It is, accordingly, a citizen of Delaware and Connecticut.

c.     Defendant Teva Pharmaceuticals USA, Inc. is a corporation organized under the laws of Delaware with its principal place of business in North Wales, Pennsylvania.  It is, accordingly, a citizen of Delaware and Pennsylvania.

d.     Defendant Cephalon, Inc. is a corporation organized under the laws of Delaware with its principal place of business in Frazer, Pennsylvania.  It is, accordingly, a citizen of Delaware and Pennsylvania.

6810291.1

e.   Defendant Johnson & Johnson is a corporation organized under the laws of New Jersey with its principal place of business in New Brunswick, New Jersey.  It is, accordingly, a citizen of New Jersey.

f.   Defendant Actavis LLC is a limited liability company organized under the laws of Delaware and its principal place of business is in Parsippany, New Jersey.  Accordingly, it is a citizen of New Jersey and Delaware.

25.   Walgreens Boots Alliance, Inc. is a corporation organized under the laws of Illinois with its principal place of business in Deerfield, Illinois.  Accordingly, it is a citizen of Illinois. Because there is diversity of citizenship between at least one plaintiff and at least one defendant, this action meets the minimal diversity requirement under Section 1332(d)(2)(A).iv.  The Amount in Controversy Exceeds the Jurisdictional Limit

26.   The amount in controversy exceeds the jurisdictional threshold under CAFA. When a plaintiff alleges no specific amount of damages, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC*, 135 S. Ct. at 554; *see also In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at *7 ("The Supreme Court held that a removing 'defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold' and does not require

14

extrinsic evidence.") (quoting *Dart Cherokee*, 135 S. Ct. at 554). And, in making such determinations, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

27.    Here, Plaintiff alleges injuries resulting from opioid abuse and addiction that has allegedly afflicted Plaintiff and its residents, with allegations extending as far back as the 1990s. *See, e.g.,* Compl. ¶ 63 ("Between 1999 and 2014 . . . ."). Given the extent of the alleged injuries and time period, the alleged amount in controversy easily exceeds $5 million.[1]

## III.    Compliance With Procedural Requirements

28.    CVS has satisfied all the procedural requirements for removal under 28 U.S.C. § 1446, and the Southern District of Texas Local Rules.

29.    CVS is filing this Notice of Removal pursuant to U.S.C. § 1441(a) in the United States District Court for the Southern District of Texas, because the state court in which the action is pending, the 152d Judicial District Court, in Harris County, is within this federal judicial district. This Notice is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure.

---

[1] The amount in controversy represents only what Plaintiff requests at this stage in the proceeding. This is not an admission that Plaintiff is entitled to recover this amount. *See In re Whole Foods Market, Inc. Greek Yogurt Marketing and Sales Practice Litigation*, 2015 WL 5737692, at \*7 ("'A removing defendant need not confess liability in order to show that the controversy exceeds the threshold.'") (quoting *Berniard* v. *Dow Chemical Company*, 481 Fed. Appx. 859, 862 (5th Cir. 2010)).

6810291.1

30.     Plaintiff served CVS with the Complaint and Summons by serving the Secretary of State of Texas on April 5, 2019.[2] CVS is removing the case within 30 days of that date; therefore, this removal is timely under 28 U.S.C. § 1446(b).  *See Murphy Bros., Inc.* v. *Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 356 (1999).

31.     Under CAFA, "[a] class action may be removed . . . by any defendant *without* the consent of all defendants."  28 U.S.C. § 1453(b) (emphasis added).

32.     After filing this Notice, in accordance with 28 U.S.C. § 1446(d), CVS will serve a copy of this Notice upon the Plaintiff, and will file a copy of the Notice with the Clerk of the 152d Judicial District Court, in Harris County, Texas.

33.     Nothing in this Notice of Removal should be interpreted as a waiver or relinquishment of any Defendant's right to assert any and all defenses or objections to the Complaint, including lack of personal jurisdiction. If there are any questions that arise as to the propriety of removal of this action, Defendant CVS respectfully requests the opportunity to submit briefing, argument, and additional evidence as necessary to support removal, without waiver of its objection to personal jurisdiction.

## Conclusion

WHEREFORE, CVS removes this action to this Court for further proceedings according to law.

---

[2] A copy of CVS's appearance is attached hereto as Exhibit A.

Dated:   May 3, 2019

Respectfully submitted,

**BRADLEY ARANT BOULT CUMMINGS LLP**

By:  */s/ Mark E. Torian*
      **MARK E. TORIAN**
      Texas Bar No. 24028051
      mtorian@bradley.com

      4400 Renaissance Tower
      1201 Elm Street
      Dallas, Texas 75270
      (214) 939-8700 (Telephone)
      (214) 939-8787 (Facsimile)

      Conor B. O'Croinin*
      **ZUCKERMAN SPAEDER LLP**
      100 East Pratt Street, Suite 2440
      Baltimore, MD 21202–1031
      (410) 949–1160
      cocroinin@zuckerman.com

      Eric R. Delinsky*
      Alexandra W. Miller*
      **ZUCKERMAN SPAEDER LLP**
      1800 M Street, NW, Suite 1000
      Washington, DC 20036–5807
      (202) 778–1800
      edelinsky@zuckerman.com
      smiller@zuckerman.com

      **ATTORNEYS FOR DEFENDANT
      CVS HEALTH CORPORATION**

* denotes national counsel who will seek pro hac vice admission

17

6810291.1

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing Notice of Removal was served on the parties below on May 3, 2019, via electric mail, pursuant to the Federal Rules of Civil Procedure.

/s/ Mark E. Torian
Mark E. Torian

Matthew R. McCarley
Texas Bar No.
mccarley@fnlawfirm.com
Bryan Fears
Texas Bar No. 2400886
fears@fnlawfirm.com
Majed Nachawati
Texas Bar No. 24038319
mn@fnlawfirm.com

**FEARS NACHAWATI, PLLC**
4925 Greenville Avenue, Suite 715
Dallas, Texas 75206
Telephone (214) 890-0711
Facsimile (214) 890-0712

Scotty MacLean
Texas Bar No. 00787942
smaclean@macleanfirm.com

**MACLEAN LAW FIRM, P.C.**
4916 Camp Bowie Blvd.
Fort Worth, Texas 76107
Telephone (214) 890-0711
Facsimile (214)890-0712

6810291.1

Matthew S. Daniel
Texas Bar No. 24047575
mdaniel@lawyerworks.com

**FERRER POIROT & WANSBROUGH**

2603 Oak Lawn Ave. Ste. 300
Dallas, Texas 75219
Telephone (214) 521-4412
Facsimile (214) 513-0115

**ATTORNEYS FOR PLAINTIFFS**

6810291.1