**Exhibit A**



**Service of Process Transmittal**
04/11/2019
CT Log Number 535277327

**TO:** Serviceof Process
CVS Health Companies
1 Cvs Dr Mail Code 1160
Woonsocket, RI 02895-6146

**RE:** **Process Served in Mississippi**

**FOR:** CVS Pharmacy, Inc. (Domestic State: RI)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

**TITLE OF ACTION:** JOHNSON COUNTY, PLTF. vs. PURDUE PHARMA, L.P., ET AL., DFTS. // TO: CVS HEALTH
*Name discrepancy noted.*

**DOCUMENT(S) SERVED:** Letter, Citation, Return, Petition

**COURT/AGENCY:** Johnson County - 18th District Court, .
Case # 201887346

**NATURE OF ACTION:** Product Liability Litigation - Drug Litigation - Opioids

**ON WHOM PROCESS WAS SERVED:** C T Corporation System, Flowood, MS

**DATE AND HOUR OF SERVICE:** By Certified Mail on 04/11/2019 postmarked on 04/08/2019

**JURISDICTION SERVED :** Mississippi

**APPEARANCE OR ANSWER DUE:** By 10:00 a.m. on the Monday next following the expiration date of 30 days after you were served this citation and petition

**ATTORNEY(S) / SENDER(S):** Matthew R. McCarley
Fears Nachawati, PLLC
4925 Greenville Avenue, Suite 715
Dallas, TX 75206
214-890-0711

**REMARKS:** Please note even though the documents are directed to CVS HEALTH, our records indicate that we are agent for all entities beginning with this name and they all share the same delivery instructions.

**ACTION ITEMS:** CT has retained the current log, Retain Date: 04/12/2019, Expected Purge Date: 04/17/2019

Image SOP

Email Notification, Serviceof Process Service_of_Process@cvs.com

**SIGNED:** C T Corporation System
**ADDRESS:** 645 Lakeland East Drive
Suite 101
Flowood, MS 39232
**TELEPHONE:** 214-932-3601



Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Secretary of State
Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

RETURN SERVICE REQUESTED

neopost
04/08/2019
US POSTAGE $007.00
FIRST-CLASS MAIL
ZIP 78701
041L12204064




Secretary of State
Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

7190 1046 4701 0103 1317

**Return Receipt (Electronic)**

2019303331-8

CVS Health
c/o CT Corporation System
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

The State of Texas



Service of Process
P.O. Box 12079
Austin, Texas 78711-2079

Phone: 512-463-5560
Fax: 512-463-0873
Dial 7-1-1 For Relay Services
www.sos.state.tx.us

David Whitley
Secretary of State

April 5, 2019

**2019-303331-8**

**Include reference number in all correspondence**

CVS Health
c/o CT Corporation System
645 Lakeland East Drive, Suite 101
Flowood, MS 39232

RE: Johnson County VS Purdue Pharma LP
152nd Judicial District Court Of Harris County, Texas
Cause No. 201887346

Dear Sir/Madam,

Pursuant to the Laws of Texas, we forward herewith by CERTIFIED MAIL, return receipt requested, a copy of the process received by the Secretary of State of the State of Texas on April 5, 2019.

CERTIFIED MAIL #71901046470101031317

Refer correspondence to:

Matthew R. McCarley
Fears Nachawati, PLLC
4925 Greenville Avenue, Suite 715
Dallas, TX 75206

Sincerely,

Service of Process
Government Filings
512-463-1662
GF/mr
Enclosure

CAUSE NO. 201887346

COPY OF PLEADING PROVIDED BY PLT

RECEIPT NO.

760908

TRACKING NO: 73593211

Plaintiff:
JOHNSON COUNTY
vs.
Defendant:
PURDUE PHARMA L P

In The 152nd Judicial District
Court of Harris County, Texas

Houston, Texas

**CITATION THROUGH THE SECRETARY OF THE STATE OF TEXAS**

**THE STATE OF TEXAS**
**County of Harris**

To: CVS HEALTH (A DELAWARE CORPORATION) BY SERVING THE SECRETARY OF THE STATE OF TEXAS
P O BOX 12079, AUSTIN TX 78711-2079

Attached is a copy of: PLAINTIFF'S ORIGINAL PETITION.

This instrument was filed on December 18, 2018 in the above cited cause number and court. The instrument attached describes the claim against you.

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration date of 30 days after you were served this citation and petition, a default judgment may be taken against you.

This citation was issued on February 22, 2019, under my hand and seal of said court.

Issued at the request of:
McCarley, Matthew R.
4925 Greenville Ave.
Dallas, TX 75206
214-890-0711
Bar Number 24041426




Marilyn Burgess, District Clerk
Harris County, Texas
201 Caroline, Houston Texas 77002
(PO Box 4651, Houston, Texas 77210)

Generated By: ANITA PEREZ

RECEIVED
SECRETARY OF STATE
APR 05 2019
Service of Process

303331 - 8

Tracking Number: 73593210

**CAUSE NUMBER: 201887346**

| | |
|---|---|
| **PLAINTIFF: JOHNSON COUNTY** | **In the 152nd** |
| vs. | **Judicial District Court of** |
| **DEFENDANT: PURDUE PHARMA L P** | **Harris County, Texas** |

OFFICER - AUTHORIZED PERSON RETURN

Came to hand at _______ o'clock ___.M. on the ________ day of ______________________, 20_____. Executed at Address)_______________________________________________ in _______________ County at o'clock ___.M. on the ________ day of ______________________, 20_____, by Summoning the _______________________________________________ Delivering to _______________________________ in person a corporation By leaving in the principal office during office hours_______________________ of the said_______________________ a true copy of this notice, together with accompanying copy of _______________________To certify which I affix my hand officially this _____________day of ___________________________, 20___.

Fees $______________________

______________________________ By______________________________

Affiant Deputy

On this day, ______________________________________________, known to me to be the person whose signature appears on the foregoing return, personally appeared. After being by me duly sworn, he/she stated that this citation was executed by him/her in the exact manner recited on the return.

SWORN TO AND SUBSCRIBED BEFORE ME, On this ______ day of ____________________________, 20__

______________________________

Notary Public

2018-87346

Filed: 11/2/2018 11:36 AM
Chris Daniel - District Clerk Harris County
Envelope No. 29812992
By: Brenda McGuire
Filed: 12/18/2018 9:36 AM
David R. Lloyd, District Clerk
Johnson County, Texas
By: Tiffany Jefferson

Cause No. DC-C201800848

| | | |
|---|---|---|
| JOHNSON COUNTY | § | IN THE DISTRICT COURT |
| PLAINTIFF, | § | Johnson County - 18th District Court |
| V. | § | JUDICIAL DISTRICT |
| PURDUE PHARMA, L.P. ET AL | § | |
| DEFENDANTS. | § | |

CERTIFIED COPY 30 PG(S) OF JOHNSON COUNTY DISTRICT COURT
DEC 17, 2018
DAVID R. LLOYD
DISTRICT CLERK – JOHNSON COUNTY, TEXAS
BY [signature] DEPUTY

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes Now the Plaintiff: The County of Johnson Texas ("Johnson County" or the "County"), by and through the undersigned attorneys and on behalf of the County Attorney for Johnson County, and for cause of action would respectfully show the Court and jury as follows:

### DISCOVERY CONTROL PLAN

1. Discovery is intended to be conducted under level 3 of Rule 190, TEXAS RULES OF CIVIL PROCEDURE.

### CONDITIONS PRECEDENT

2. Plaintiff alleges that all conditions precedent have been performed or have occurred.

### RULE 47 STATEMENT OF MONETARY RELIEF SOUGHT

3. Per Rule 47 of the Texas Rules of Civil Procedure, the County states that although the full measure of its damages is still being calculated, its damages caused



DISTRICT COURT JOHNSON COUNTY TEXAS
Certified Document Nbr. Page 1 of 30

Defendants' acts and omissions exceed $1,000,000 but are believed to be less than 100,000,000. Accordingly, at this time in the litigation, Johnson County states that it is seeking monetary relief for an amount greater than $1,000,000 and less than $100,000,000, the rightful and just amount to be determined by the jury.

## PARTIES

### CORPORATE DEFENDANTS

4. Plaintiff brings this action for and on behalf of Johnson County, which provides a wide range of services on behalf of its residents, including, but not limited to, services for families and children, public health, public assistance, law enforcement, and social services, as well as medical and prescription benefits that the County provides to its employees and retirees.

5. Purdue Pharma L.P. is a limited partnership organized under the laws of Delaware with its principal place of business in Stamford, Connecticut. Purdue Pharma Inc. is a New York corporation with its principal place of business in Stamford, Connecticut The Purdue Frederick Company is a Delaware corporation with its principal place of business in Stamford, Connecticut. Purdue Pharmaceuticals L.P. is licensed by the Food & Drug Safety Licensing Group of the Texas Department of State Health Services ("DSHS") as a manufacturer and/or distributor of prescription drugs in Texas (collectively "Purdue").

6. Purdue manufactures, promotes, sells, and distributes opioids nationally and in Johnson County, including among them OxyContin, MS Contin, Dilaudid/Dilaudid HP, Butrans, Hysingla ER, and Targiniq ER. OxyContin is Purdue's best-selling opioid. Since 2009, Purdue's annual sales of OxyContin have fluctuated between $2.47 billion and $2.99



DISTRICT COURT TEXAS JOHNSON COUNTY

billion, up four-fold from its 2006 sales of $800 million. OxyContin constitutes roughly 30% of the entire market for analgesic drugs (painkillers).

7. Purdue is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Purdue can be served in accordance with TEX. CIV. PRAC. & REM. CODE §17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

8. Cephalon, Inc. ("Cephalon.") is a Delaware corporation with its principal place of business in Frazer, Pennsylvania. In 2011, Teva Ltd. acquired Cephalon. Teva Pharmaceutical Industries, Ltd ("Teva, Ltd.") is an Israeli company with its corporate headquarters in Petah Tikva, Israel. Teva Pharmaceuticals USA, Inc. ("Teva USA") is a wholly-owned subsidiary of Teva Ltd. and is a Delaware corporation with its principal place of business in Pennsylvania. Teva USA acquired Cephalon in October 2011. Teva, Ltd., Teva USA, and Cephalon, Inc. (collectively "Cephalon") work together closely to market and sell Cephalon products in the State of Texas. Teva conducts all sales and marketing activities for Cephalon in the State of Texas through Teva USA and has done so since it's October 2011 acquisition of Cephalon...

9. Cephalon manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including Actiq and Fentor, for which Cephalon is identified as the drug sponsor and Teva USA is identified as the distributor.

10. Cephalon is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Cephalon can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the



DISTRICT COURT TEXAS JOHNSON COUNTY

Certified Document Number: [illegible]

Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

11. Janssen Pharmaceuticals, Inc. ("Janssen") is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey and is a wholly-owned subsidiary of Johnson & Johnson (J&J), a New Jersey corporation with its principal place of business in New Brunswick, New Jersey. Otho-McNeil-Janssen Pharmaceuticals, Inc.; now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. Janssen Pharmaceuticals, Inc. now known as Janssen Pharmaceuticals, Inc., is a Pennsylvania corporation with its principal place of business in Titusville, New Jersey. J&J is the only company that owns more than 10% of Janssen Pharmaceuticals' stock and corresponds with the FDA regarding Janssen's products. Upon information and belief: J&J controls the sale and development of Janssen Pharmaceuticals' drugs and Janssen's profits inure to J&J's benefit. (collectively "Janssen").

12. Janssen manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including Duragesic, Nucynta and Nucynta ER. These opioid drugs are sold both directly by Janssen and by third party drug distributors. Janssen is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Janssen can be served in accordance with TEX. CIV. PRAC. & REM. CODE §17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

13. Endo Health Solutions, Inc. is a Delaware corporation with its principal place of business in Malvern, Pennsylvania. Endo Pharmaceuticals, Inc. is a wholly-owned subsidiary of Endo Health Solutions Inc. and is a Delaware corporation with its principal



DISTRICT COURT TEXAS JOHNSON COUNTY

Certified Document Number: [illegible]

place of business in Malvern, Pennsylvania (collectively "Endo.").

14. Endo manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including Opana and Opana ER. Opana ER is reported to have been prescribed up to 50,000 times per day. However, June 8, 2017, the U.S. Food and Drug Administration requested that Endo remove Opana ER from the market based on FDA's concern that the benefits of the drug may no longer outweigh its risks. Endo is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Endo can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

15. Abbott Laboratories is an Illinois corporation with its principal place of business in Abbott Park, Illinois. Knoll Pharmaceutical Company is a wholly-owned subsidiary of Abbott Laboratories and is a New Jersey corporation with its principal place of business in Parsippany, New Jersey (collectively "Abbott").

16. Abbott currently and/or historically manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including Vicoprofen and Dilaudid. Abbott Laboratories can be served by serving its registered agent as follows: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

17. Allergan PLC is a public limited company incorporated in Ireland with its principal place of business in Dublin Ireland. Actavis PLC acquired Allergan PLC in March 2015, and the combined company changed its name to Allergan PLC in January 2013. Before that, Watson Pharmaceuticals, Inc. acquired Actavis, Inc. in October 2012, and the



DISTRICT COURT JOHNSON COUNTY TEXAS

combined company changed its name to Allergan Finance, LLC as of October 2013. Watson Laboratories, Inc. is a Nevada corporation with its principal place of business in Corona, California, and is a wholly-owned subsidiary of Allergan PLC (f/k/a Actavis, Inc., f/k/a Watson Pharmaceuticals, Inc.). Actavis Pharma, Inc. (f/k/a Actavis, Inc.) is a Delaware corporation with its principal place of business in New Jersey and was formerly known as Watson Pharma, Inc. Actavis LLC is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey. Each of these Defendants is owned by Allergan PLC, which uses them to market and sell its drugs in Texas. Upon information and belief, Allergan PLC exercised control over these marketing and sales efforts and profits from the sale of Allergan/Actavis products ultimately inure to its benefit (collectively "Actavis.").

18. Actavis manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including generic Oxycontin (oxycodone hydrochloride) and Dilaudid (hydromorphone hydrochloride). Allergan Sales is identified as the sponsor and/or entity responsible for the manufacture and/or distribution of the opioid medication Fiorinal with codeine (FDA NDA # 019429). Actavis acquired the rights to another opioid, Kadian (morphine sulfate, NDA # 020616), from King Pharmaceuticals, Inc. on December 30, 2008, and began marketing Kadian in 2009.

19. Actavis is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Actavis can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

20. Actavis has elected to do business in Texas under a license as a domestic



DISTRICT COURT JOHNSON COUNTY TEXAS
Certified Document Nbr: [illegible]

manufacturer and/or distributor. The entities that are licensed by DSHS to conduct business in Texas as domestic licensees are: Allergan Sales LLC 8301 Mars Dr. Waco, Texas 76712 Allergan USA Inc., 800 Waters Ridge Dr. 100, Lewisville, Texas 75057

21. Plaintiff alleges that Allergan Sales LLC and Allergan USA Inc. are domiciled in the State of Texas and are proper parties who may be sued under their assumed or common names for enforcing for or against it a substantive right TEX. R. CIV. P. 28. Allergan Sales LLC and Allergan USA Inc. may be served at the above addresses.

22. Insys Therapeutics, Inc. ("Insys") is a Delaware corporation with its principal place of business in Chandler, Arizona. Insys manufactures, promotes, sells, and/or distributes opioids nationally and in Johnson County, including Subsys (fentanyl sublingual spray).

23. Insys can be served by serving its registered agent as follows: CT Corporation System, 1999 Bryan Street, Suite900, Dallas, Texas 75201-3136.

24. Insys has elected to do business in Texas under a license as a domestic drug manufacturer and/or distributor. The entity that is licensed by DSHS to conduct business in Texas as a domestic licensee is: Insys Manufacturing LLC 2700 Oakmont Drive Round Rock, Texas 78665.

25. Plaintiff alleges that Insys Manufacturing LLC is domiciled in the State of Texas and is a proper party who may be sued under its assumed or common name for enforcing for or against it a substantive right. TEX. R. CIV. P. 28. Insys Manufacturing may be served at the above address.

26. McKesson Corporation ("McKesson") is a Delaware corporation with



DISTRICT COURT JOHNSON COUNTY TEXAS

principal place of business in San Francisco, .California. McKesson distributes pharmaceuticals to retail pharmacies and institutional providers across the United States, including Texas and Johnson County. The drugs distributed by McKesson include powerful, addictive opioids, such as oxycodone and hydrocodone.

27. McKesson is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, McKesson can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

28. McKesson has elected to do business in Texas under a license as a domestic drug manufacturer and/or distributor. There are three "McKesson" entities that are licensed by DSHS to conduct business in Texas as domestic licensees.

29. Plaintiff alleges that McKesson Corporation and McKesson Medical-Surgical Inc. are domiciled in the State of Texas and. are proper parties who may be sued under their assumed common name for enforcing for or against it a substantive right TEX. R. CIV. P. 28. McKesson Corporation and McKesson Medical-Surgical Inc. may be served at the above addresses.

30. Cardinal Health, Inc. ("Cardinal") is an Ohio Corporation with its principal place of business in Dublin, Ohio. Cardinal distributes pharmaceuticals to retail pharmacies and institutional providers across the United States, including Texas and Johnson County. The drugs distributed by Cardinal include powerful, addictive opioids, such as oxycodone and hydrocodone.

31. Cardinal is engaging in business in the State of Texas but has not designated



DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Number: 8 Page 8 of 9

or maintained a resident agent for service of process. Therefore, Cardinal can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079.

32. Cardinal has elected to do business in Texas under a license as a domestic drug manufacturer and/or distributor. There are nine "Cardinal" entities that are licensed by DSHS to conduct business in Texas as domestic licensees.

33. Plaintiff alleges that Cardinal Health 110 LLC, Cardinal Health 200 LL4 and Cardinal Health 414 LLC are domiciled in the State of Texas and are proper parties who may be sued under their assumed or common name for enforcing for or against it a substantive right Tex. R. Civ. P. Cardinal Health 110 LLC, Cardinal Health 200 LLC, and C8rdinal Health 414 LLC may be served at the above addresses.

34. Amerisource Bergen Drug Corporation ("Amerisource is a Delaware Corporation with its principal place of business in Chesterbrook, Pennsylvania. Amerisource distributes pharmaceuticals to retail pharmacies and institutional providers across the United States, including Texas and Johnson County. The drugs distributed by Amerisource include powerful, addictive opioids, such as oxycodone and hydrocodone.

35. Amerisource is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, Amerisource can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12.079Austin, Texas 78711-2079.

36. Amerisource has elected to do business in Texas under a license as a domestic drug manufacturer and/or distributor4 There are two Amerisource entities that are licensed



DISTRICT COURT TEXAS JOHNSON COUNTY

Certified Docmt Nbr. 8Pg: 9/ 3

by DSHS to conduct business in Texas as domestic licensees, including: Amerisource Bergen Drug Corporation 12727 W. Airport Blvd. Sugarland, Texas 77478

37. Plaintiff alleges that Amerisource Bergen Drug Corporation is domiciled in the State of Texas and is a proper party who may be sued under its assumed or common name for enforcing for or against it a substantive right. TEX. R. CIV. P. 28. Amerisource Bergen Drug Corporation may be served at the above address.

38. Mallinckrodt PLC ("Mallinckrodt") is an Irish public limited company with its corporate headquarters in Staines-Upon-Thames, Surrey, United Kingdom and maintains a U.S. headquarters in St. Louis, Missouri. Mallinckrodt distributes pharmaceuticals to retail pharmacies and institutional providers across the United States, including Texas and Johnson County. The drugs distributed by Mallinckrodt include powerful, addictive opioids, such as oxycodone and hydrocodone.

39. Abbvie, Inc. ("Abbvie") is a Delaware corporation with its principal place of business in North Chicago, Illinois, and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. Knoll Pharmaceutical Company ("Knoll") has been a wholly-owned subsidiary of Abbvie from January 1, 2013. Knoll is a New Jersey corporation with its principal place of business in Parsippany, New Jersey, and may be served through its registered agent for service of process, CT Corporation System, 350 N St. Paul Street, Dallas, Texas 75201.

40. Knoll irresponsibly marketed narcotics, such as Vicodin, through toys and souvenirs and did so to boost the sales of opioids. Taking advantage of the fact that Vicodin was not regulated as a Schedule II controlled substance for many years, and the fact



DISTRICT COURT T E X A S JOHNSON COUNTY

Certified Document Nbr: Page of

physicians and consumers did not fully appreciate the highly addictive nature of Vicodin, Knoll advertised Vicodin with tag lines such as "The Highest Potency Pain Relief You Can Still Phone In." This tag line came as part and parcel of souvenirs like a "Vicodin" fanny pack and water bottle, both bearing the name of Vicodin, the opioid Knoll was promoting. This irresponsible marketing of a narcotic drug caused doctors and patients to believe Vicodin was safer than it really was, to the detriment of people in Johnson County. Abbvie began manufacturing, developing, promoting, marketing, and selling the opioid drug, Vicodin, in the U.S. and its opioid business impacts Johnson County. On information and belief, it continues to do so at the time of filing this pleading.

41. CVS Health ("CVS") is a Delaware corporation with its principal place of business in Rhode Island. CVS is engaging in business in the State of Texas but has not designated or maintained a resident agent for service of process. Therefore, CVS can be served in accordance with TEX. CIV. PRAC. & REM. CODE § 17.042 and § 17.044 by serving the Secretary of the State of Texas, P.O. Box 12079, Austin, Texas 78711-2079. During all relevant times, CVS Health has sold and continues to sell prescription opioids in and in close proximity to Johnson County.

42. Walgreens Boots Alliance, Inc., a/k/a Walgreen Co. ("Walgreens") is a Delaware corporation with its principal place of business in Illinois and may be served through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 211 E. 7th Street, suite 620, Austin, Texas 78701. At all relevant times, Walgreens has sold and continues to sell prescription opioids in close proximity to Johnson County.

43. Wal-Mart Stores, Inc. ("Wal-Mart") is a Delaware corporation with



DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Nbr: Page 17 of

principal place of business in Arkansas and may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. At all relevant times, Wal-Mart has sold and continues to sell prescription opioids at locations in and in close proximity to Johnson County.

44. The foregoing parties are referenced in this petition as the "corporate Defendants" or as the "Defendants."

## INDIVIDUAL DEFENDANTS

45. Defendant John Tai Dang, M.D. ("Dr. Dang") is a medical doctor who resides in and was previously licensed to practice medicine in Cleburne, Texas. He may be served with citation at 110 West Henderson Street, Cleburne, Texas 76033.

46. Dang Medical Clinic, P.A., is a business providing medical services to patients in Cleburne, Texas. Dang Medical Clinic is owned and operated by Dr. Dang. Dang Medical Clinic, P.A. may be served citation at 1005 Woodard Avenue, Cleburne, Texas 76033.

47. Dang Occupational Consultants, Inc., is a business providing medical services to patients in Cleburne, Texas Dang Occupational Consultants, Inc. is owned and operated by Dr. Dang. Dang Occupational Consultants, Inc. may be served citation at 510 F.M. 1434, Cleburne, Texas 76033.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL DEFENDANTS

48. The widespread use of opioid drugs is the direct result of a concerted industry scheme that has evolved over the past two decades. The Defendants and their affiliates successfully created a market for these products by identifying and expanding new ma[illegible]



DISTRICT COURT JOHNSON COUNTY

Certified Document Number: [illegible]

for these products; relying on false science, which was frequently the work of their own "product champions"; enlisting either unwitting or complicit health providers as their advocates and accomplices; and saturating the direct to consumer market with false advertising, promotions, and reassuring messages, all of which were calculated to cause and did cause consumers in Johnson County to seek out these medications. In short, these Defendants expanded the market for opioids beyond that for which it was originally intended and created a disaster of gargantuan proportions, the likes of which has never been seen in the pharmaceutical industry.

49. These Defendants successfully created and nurtured an environment in which opioid abuse was a virtual certainty. By spending millions of dollars to convince the populace that they needed and would benefit from the use of Defendants' opioid drugs, these tortfeasors produced a network of drug distributors, dispensers and prescribers who preyed upon a generation of dependent drug users and abusers who believed their physical ailments were being appropriately treated by the Defendants' prescription drugs. It came to pass, unfortunately, that the Defendants' primary success was in constructing a population of citizens whose initial use of opioids was legal and legitimate, but whose use ultimately transformed into an addiction that could be fulfilled only by the use of illegal street drugs.

50. A recent report on the evolution of the use of opioids in Texas shows that it impacts urban and rural citizens; men and women; young, middle aged, and old; all races and creeds; and both the rich and the poor are vulnerable to the enticement of opioids. No resident of Johnson County is safe from the deleterious effects of the opioid overdose epidemic



DISTRICT COURT TEXAS JOHNSON COUNTY

Certified Document Number: [illegible]

either directly and indirectly.

51. This industry-wide misbehavior has overwhelmed society in general and Johnson County in particular. On a national scale, the magnitude of the opioid crisis is incomprehensible. Most tragically, drug overdose and opioid-related deaths continue to increase in the United States. Drug overdose is the leading cause of accidental death in the US, with 52,404 lethal drug overdoses in 2015. Opioid addiction is driving this epidemic, with 20,101 overdose *deaths* related to prescription pain relievers; and 12,990 overdose deaths related to heroin in 2015.

52. Despite assurances from industry that efforts are being made to minimize the harm caused by opioid use, drug overdose deaths and opioid-involved deaths continue to increase in the United States. The majority of drug overdose deaths (more than six out of ten) involve an opioid. From 2000 to 2015, more than half a million people died from drug overdoses. Ninety-one Americans die every day from an opioid overdose. This plague affects all age groups.

53. The societal impact of controlled prescription drug diversion and abuse is considerable. Violent and property crime associated with drug diversion and abuse has increased in all regions of the United States over the past 5 years, according to the National Drug Intelligence Center (NDIC) National Drug Threat Survey (NDTS). On a broader scale, the Centers for Disease Control and Prevention estimates that the total "economic burden" of prescription opioid misuse alone in the United States is $78.5 billion a year, including the costs of healthcare, lost productivity, addiction treatment, and criminal justice involvement.



DISTRICT COURT JOHNSON COUNTY TEXAS

54. These harms have likewise been manifested in Johnson County, Texas Opioid prescribing rates in Johnson County historically have been above average and as high as 90.9 prescriptions per 100 persons. The vast majority of drug users and abusers - 94.52% - need addiction treatment but receive none, and a quarter of these patients have no health insurance, thereby imposing a huge healthcare burden on the county and its residents. Texas also ranks first nationally in pharmacy burglaries, representing 30% of the national total.

55. Of the more than 33,000 opioid-related deaths in the United States in 2015, 2588 were in Texas, including in Johnson County. While Texas has worked tirelessly to combat the opioid contagion, the rate of increase of overdose deaths has increased from 1.5 per 100,000 in 1999 to 4.2 per 100,000 in 2014. More specifically, in Johnson County, the rate of overdose deaths has increased from 4.1-6 per 100,000 in 1999 to 12.1-14 per 100,000 in 2015.

56. The abuse of prescription opioids has contributed to another unfortunate, but foreseeable, phenomenon: the increase in the use of "recreational" opioids, namely heroin. Many patients who are prescribed opioids for medical purposes become addicted and believe they have no alternative but to turn to illegal opioids. The inevitable result of this drastic increase in the use of heroin has been a commensurate increase in heroin-related deaths, as with other opioids.

57. Texas and Johnson County have been particularly impacted by the rise in heroin use and have seen a prolific increase in the mortality rates of deaths due to heroin, which is the drug most frequently used to replace prescription opioids. The corporate



DISTRICT COURT JOHNSON COUNTY T E X A S

Certified Document Number: [illegible]

Defendants bear substantial responsibility for the proliferation of illegal opioid drug use. Research shows that approximately 80 percent of people who use heroin first misused prescription opioids.

58. Many members of the public were first exposed to opioids through legitimate prescriptions for acute pain dispensed by well-meaning healthcare providers. Unfortunately, a significant percentage of these patients became dependent on the highly addictive medications, through no fault of their own, and eventually succumbed to the temptation to experiment with illegal street drugs. In fact, the CDC has presented data to show that the probability of long-term opioid use increases most sharply in the first days of therapy, particularly after 5 days or 1 month of opioids have been prescribed. Based on the CDC data, patients receiving less than 8 days-worth of opioids had a 13.5% likelihood of long-term use. More astonishingly, patients receiving a prescription for at least a 31-day supply showed a 29.9% likelihood of long-terms use.

59. Once hooked on a prescription opioid, the subpopulation that succumbs to addiction frequently shifts to heroin as prescription drugs become less available. Data shows that recent increases in heroin use accompanied a downward trend in Oxycontin use.

60. Across the Nation, the next generation of leaders, workers, and parents have succumbed to a horrific increase in the risk of deaths from the use of heroin and other opioids

61. The epidemic caused by the collective actions of the Defendants has also impacted the most innocent members of society - our children. Use of opioid



DISTRICT COURT JOHNSON COUNTY TEXAS

relievers increased among all populations, including women of reproductive age and pregnant women. A recent CDC report found that nearly a third of women of reproductive age were prescribed an opioid in the previous year. Since 2000, there has been a drastic increase in the rates of opioid use disorder among pregnant women and the number of newborns diagnosed with opioid withdrawal after birth, known as neonatal abstinence syndrome (NAS). In 2012 alone, one child was born every 25 minutes with NAS. Not only is this condition traumatic for the child and the family, but it poses a prohibitive financial burden on the residents of Johnson County. The costs of treating children diagnosed with NAS are exponentially higher than the costs associated with newborns not affected with NAS: an average of $66,700 compared to $3,500 cost for healthy newborns. Additionally, the long-term outcomes of the neonatal abstinence syndrome are difficult to predict, but likely include adverse cognitive effects throughout childhood, mental health and behavioral problems, and physical disabilities, the costs of which are likely to be borne by the citizens of Johnson County for many years to come.

62. While opioid use proliferated, and its insidious and devastating effects were hoisted upon the citizens of Johnson County and the Nation, the companies responsible for this scourge profited in a manner incomprehensible to even the most cynical members of society. One report estimated that 254 million opioid prescriptions were filled in 2010 alone, enough to medicate every adult in the U.S. for a month on a round-the-clock basis. In that same year, pharmaceutical companies generated revenues of $11 billion from opioid sales alone. The opioid market is now worth nearly $10 billion a year in sales in the United States, according to a 2016 report.



DISTRICT COURT TEXAS JOHNSON COUNTY

63. Between 1999 and 2014 sales of prescription opioid drugs almost quadrupled in America, not simply in response to patient suffering, but because an ever-increasing portion of population is now addicted to these powerful drugs. Americans now consume four-fifths of the global supply of opioids. This increase in opioid sales has been accompanied by a startling, commensurate increase in the rates of opioid treatment admissions.

64. The sales of these drugs were reflected in astronomical salaries for the executives who made the decisions to create, market, and exploit these dangerous controlled substances. While certain compensation information is not publicly available, published sources report that in 2016, the CEO of Allergan (Brenton L. Saunders) was paid over $21 million; the CEO of Johnson & Johnson (Alex Gorsky) was paid over $21 million; and the CEO of Abbott (Miles White) was paid $18.8 million. One of the most glaring direct results of the opioid epidemic has been the obscene profits enjoyed by the Defendants and the exorbitant salaries for their chief executives.

65. Internal documents clearly establish that the Defendants sought to avoid scrutiny of these dangerous controlled substances by utilizing seemingly independent third-party health care organizations to promote the use of these drugs. With this unscrupulous machination plotted out, the industry manipulated the flow of information about these opioid controlled substances to the medical community and their patients. Support for the use of these medications came from such seemingly independent organizations as the Federation of State Medical Boards ("FSMB"), the American Pain Society ("APS"), the American Academy of Pain Medicine ("AAPM"), and the American

DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Nbr: [illegible]

Geriatrics Society ("ABS"). These groups touted the benefits of long-term opioid use for chronic pain, all while claiming to be solely focused on patient wellbeing. These organizations were in fact nearly fully-funded by the Defendants for the sole purpose of convincing the public and the medical community that these seemingly independent pain organizations believed in the virtues of opioid use. In fact, these organizations, funded by the Defendants, served only to distribute false information regarding the dangers of abuse and addiction historically associated with these drugs.

66. The FSMB is a trade organization representing various state medical boards across the United States. The state board members are healthcare providers or are otherwise associated with the healthcare industry, and have the power to license doctors, investigate complaints, and discipline physicians. The FSMB finances opioid and pain specific programs through grants from Defendants.

67. A 2004 iteration of the FSMB Guidelines, as well as and the 2007 book adapted from the 2004 guidelines, Responsible Opioid Prescribing, taught not that opioids could be appropriate in limited cases or after other treatments had failed, but that opioids were "essential" for treatment of chronic pain, including as a first prescription option. Unbelievably, the regulations changed so that doctors could be censured or have other action taken against them for failing to use opioids as a treatment of first choice. These guidelines, posted online, were available to and intended to reach Texas physicians.

68. The publication of Responsible Opioid Prescribing was backed largely by drug manufacturers, including Cephalon, Endo, and Purdue. The FSMB financed the distribution of Responsible Opioid Prescribing through its member boards by contracting



DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Number: [illegible]

with drug companies, including Endo and Cephalon, for bulk sales and distribution of the guidelines to sales representatives for subsequent distribution to prescribing doctors.

69. In fact, 163,131 copies of Responsible Opioid Prescribing were distributed to state medical boards and through the boards, to practicing doctors. Not surprisingly, FSMB benefitted from the distribution of this publication by earning approximately $250,000 in revenue and commissions from their sale. The FSMB website describes the book as the "leading continuing medication education (CME) for prescribers of opioid medications."

70. Locally, the Texas Pain Society had an active presence in Johnson County and offered guidance to physicians and patients on the issue of pain management. The "TexasPain.org" website, for example, assured patients about the safe use of opioids, stating: "Research shows that the chance of people with chronic pain becoming addicted to pain-relieving drugs is extremely small. When taken properly for pain, drugs can relieve pain without addiction. Needing medication to control your pain is not addiction." Again unsurprisingly, the Texas Pain Society was in fact an organization supported by various members of the pharmaceutical industry, including Purdue, Endo, and Cephalon.

71. This type of industry-supported "advice" was a substantial impetus for patients to seek out, doctors to prescribe, and pharmacies to dispense immense amounts of opioids. As an example, Dr. John Dang had his Texas Medical Board license suspended for, among other violations, violating the Board rules regarding the treatment of pain. Specifically, Dr. Dang prescribed dangerous controlled substances, including Opana (Oxymorphone Hydrochloride) and Xartemis (Oxycodone Hydrochloride



DISTRICT COURT TEXAS JOHNSON COUNTY
Certified Document Number: ... Page 0f ...

Acetaminophen) to a patient after becoming aware that the patient had a history of drug abuse and after the patient was admitted to a recovery and treatment program for addiction to opioid controlled substances. Such reckless and greedy abuses of prescriptive rights by physicians have contributed significantly to the opioid epidemic in Johnson County.

72. The hardship attributable to this disaster has been disproportionately borne by the youth of Texas. According to recent survey, as of 2016, at least 5 % of Texas youth reported using opioid medications pandered by the Defendants at some point during their lifetime. A shocking 2.4% of the surveyed population reported using these drugs in the past month.

73. The Defendants violated numerous provisions of Texas law and now must answer to the Court and the citizens of Johnson County, Texas.

**FACTUAL ALLEGATIONS APPLICABLE TO JOHN TAI DANG, M.D., DANG MEDICAL CLINIC, P.A., AND DANG OCCUPATIONAL CONSULTANTS, INC.**

74. John Tai Dang, M.D., was previously licensed physician in Johnson County, Texas. Dr. Dang created a public nuisance through the issuing of prescriptions outside the usual course of practice and for other than a legitimate medical purpose. Such dispensing was performed primarily for monetary gain and provides ample evidence of a conspiracy to profit from a known public nuisance.

75. Dr. Dang's illegitimate endeavors in dispensing dangerous controlled substances were performed through his work at Dang Medical Clinic, P.A. and Dang Occupational Consultants, Inc.



DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Nbr. 8 Page 21 of 8

76. The evidence will establish that the activities of Dr. Dang created a public nuisance which resulted in financial losses to Johnson County, and for which the County now seeks all remedies, both legal and equitable, to which it is entitled.

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS:

### A. PUBLIC NUISANCE

77. Johnson County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this petition as though fully alleged herein.

78. Texas law forbids the maintenance of a public nuisance. A "public" or "common" nuisance is defined in the Texas common law as a field of tort liability, a kind of damage done, rather than any particular type of conduct. As in the case of any other kind of damage, it may be inflicted by conduct which is intended to cause harm, by that which is merely negligent, or by that which involves an unusual hazard or risk. A cause of action for public nuisance may be prosecuted, therefore, when the Defendants' conduct unreasonably interferes with a right common to the public at large by affecting the public health or public order.

79. The character of the Defendants' conduct and their commensurate liability for the same, is measured using an objective standard. The expectations and demands of the community thus serve as the yardstick by which the reasonableness of the actors' behavior is to be judged.

80. In addition, statutorily prescribed conduct may determine the



DISTRICT COURT TEXAS JOHNSON COUNTY

Certified Document Nbr: 8 Pg: 2 of 9

reasonableness of the Defendants' business operations. It is alleged that the Defendants' conduct was unreasonable and tortious in numerous respects of their business in the manufacture, delivery, dispensation, or distribution of their opioid medications.

81. Johnson County, has standing to bring this claim of public nuisance against all Defendants for damages, injunctive relief, and abatement of such public nuisance. The Texas law of public nuisance provides various remedies to damaged or injured parties when confronted with a public nuisance created by the conduct, in whole or in part, by the Defendants.

82. By engaging in the conduct referenced in this petition, the manufacturing Defendants, distributor Defendants and individual Defendants, individually and collectively, created a public nuisance by unreasonably interfering with a public right and public interest. Pleading further in the alternative, the conduct referenced herein was abnormal, dangerous and out of place in its surroundings, and constitutes a public nuisance. Such conduct constituted significant interference with the public's health and safety, and adversely affected all or a considerable part of the Johnson County community.

83. Plaintiff contends that the wrongful acts in which the Defendants engaged were coordinated with other members of this industry, all of whom were acting in concert to achieve a common objective, which when achieved created a public nuisance. The conduct of the Defendants has created a nuisance which has resulted in injuries, damages, and deaths that adversely affected the citizens of Johnson County. The harm suffered is detailed elsewhere in this petition, but includes the substantial costs of dealing with



DISTRICT COURT JOHNSON COUNTY TEXAS

Certified Document Number: 8 Page 23 of 3

aspects of the opioid epidemic including healthcare, law enforcement, and social services

**B. TEXAS COMMON LAW NUISANCE**

84. By engaging in the conduct referenced above, the Manufacturing Defendants, Distributor Defendants and Doctor Defendant, individually and collectively created a public nuisance by unreasonably interfering with a public right and public interest. Such conduct constituted significant interference with the public's health and safety, and adversely affected all or a considerable part of the Johnson County community. All such Defendants acted with intent with respect to the nature and result of their conduct, and it was their conscious objective and desire to engage in such conduct and to produce such result as described herein. Pleading in the alternative, the conduct referenced herein in the creation of a public nuisance was committed by all Defendants, negligently. Pleading in the alternative, the conduct referenced herein was abnormal, dangerous and out of place in its surroundings and constitutes a public nuisance. Plaintiff Johnson County has standing to bring this claim of public nuisance against all Defendants.

**SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS: CIVIL CONSPIRACY**

85. Johnson County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this petition as though fully alleged herein.

86. The conduct of all Defendants as described above was done in furtherance of a conspiracy. The joined Defendants had knowledge of, agreed to, and intended a common objective or course of action to be accomplished by unlawful means or for an



DISTRICT COURT JOHNSON COUNTY

Certified Document Nbr: [illegible]

unlawful purpose, and committed one or more unlawful, overt acts in furtherance of the same that resulted in the damages that Plaintiff has sustained and continues to sustain on a regular basis. All the Defendants performed acts to further the conspiracy and are jointly and severally liable for the damages, costs and expenses associated with their conduct.

87. More specifically, the Defendants coordinated their efforts to create a market for their opioid medications through industry-created misperception of the benefits and risks of these drugs. The specific actions taken by the Defendants have been described elsewhere in this pleading but include the support and dissemination of medical and promotional information calculated to assure prescribers and patients of the safety of these drugs. This common behavior was illegal and tortious in many respects and was a direct cause of the propagation of both legal and illegal opioid drug use.

88. The conduct of the Defendants demonstrates the method of accomplishing the objective of the civil conspiracy. The Defendants prescribed and dispensed millions of doses of opioids under the auspices of a distribution system that purported to be "closed" and carefully monitored. The fact that the Defendants were empowered to make available to the public inconceivable quantities of these dangerous controlled substances can be explained only by concluding that the opioid drug manufacturers and distributors knew and supported the behavior of the prescribing physicians. With awareness -actual or constructive -of the conduct of the individual Defendants and their ilk, reasonable minds would necessarily conclude that the corporate Defendants were aware of and supported the wrongful conduct and accompanying harm attributable to the prescribing



DISTRICT COURT JOHNSON COUNTY TEXAS

and dispensing by the individual Defendants.

89. The medical community and the public rely upon the integrity of prescription drug companies to advertise, promote, and. market their products in conformity with both common law and statutory obligations. There is an overriding responsibility to promote these products in a manner that is truthful and that discloses important safety information. Similarly, when drug companies engage in indirect forms of communication, they have a concomitant obligation to disseminate only accurate and honest product information. This responsibility applies to the myriad vehicles by which drug makers influence product use: marketing brochures for physicians and patients, TV commercials, FAQ'S, continuing medical education programs, web sites, and on and on. In all these instances, the members of the opioid drug industry have both common law and regulatory restraints that govern their behavior. It is alleged that the corporate Defendants violated these rules and disseminated untrue, misleading, and erroneous information about opioids.

90. The joined Defendants, corporate and individual, are also guilty of acting in concert to profit from the opioid crisis. The drug manufacturers and distributors, as alleged herein, were responsible for maintaining an environment in which opioid drugs were available in massive quantities and were subject to significant rates of diversion to illicit uses. Plaintiff contends that the majority of healthcare providers who prescribed opioids, and clinics or pharmacies that dispensed them, were legitimate businesses. However, there are individuals who take advantage of the profligate system that the corporate Defendants supported and supplied. Dr. Dang is guilty of exploiting the opioid



DISTRICT COURT JOHNSON COUNTY TEXAS

drug distribution system for profit, and at the expense of the citizens of Johnson County. However, Dr. Dang would have been unable to perpetrate his tortious acts if the corporate Defendants had fulfilled their responsibilities under Texas law to monitor, detect, investigate, and report suspicious orders of prescription opiates.

91. It is alleged that one or more of the corporate Defendants had actual knowledge of the business operations being conducted by Dr. Dang, and continued to supply opioid controlled substances to pharmacies filling Dr. Dang's prescriptions, in which case the corporate Defendants were active co-conspirators in these operation; in the alternative, it is alleged that the corporate Defendants had knowledge of these events and passively supported the clinics by failing to monitor, detect, investigate, and report suspicious orders of prescription opiates.

92. Hence, it is alleged that the Defendants acted in concert with one another, with an objective to be accomplished (sales of opioids), a meeting of the minds on the manner of accomplishing this objective, numerous unlawful, overt acts in furtherance of this goal, and damages to the citizens of Johnson County, Texas as a proximate result.

## THIRD CAUSE OF ACTION AGAINST THE CORPORATE DEFENDANTS: NEGLIGENCE

93. Johnson County re-alleges and incorporates by reference each of the allegations contained in the preceding paragraphs of this petition as though fully alleged herein.

94. In addition, thereto: (a) Defendants failed to implement policies and procedures to document the flow of opioids from the point of manufacture throughout



DISTRICT COURT TEXAS JOHNSON COUNTY

the distribution network ; (b) Defendants failed to properly train or require employees and affiliates to identify, report, and investigate any improprieties in the flow of opioids; (c) As a proximate result, Defendants have caused Johnson County to incur excessive costs to treat the opioid epidemic, including but not limited to, increased costs of social services, health systems, law enforcement, judicial system, and treatment facilities.

## DAMAGES

95. Plaintiff has been damaged by Defendants' conduct and can enumerate the following items and categories of items that represent the types of damages that resulted, directly and indirectly, from the behavior of the named Defendants and their associates: The cost of opioid medications that would not otherwise have been prescribed, i.e., unnecessary or excessive opioid prescriptions; work loss expense attributable to individuals who are addicted to opioids or who suffer adverse health effects due to use of opioids; time and expenses incurred by county criminal justice agencies related to handling matters arising from opioid use; law enforcement time and expenses incurred by county agencies related to handling matters arising from the opioid epidemic; hospital and medical costs associated with adverse health effects from opioid addiction: costs and expenses incurred by social services agencies due to the opioid epidemic; costs and expenses to third parties due to the conduct of addicts.

96. Plaintiff will further explain on the proffered elements of damages and quantify the amounts allocable to these categories and items as this case progresses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:






Certified Document Number

a. That Defendants be ordered to abate the public nuisance that they created in violation of Texas common law.

b. That Plaintiff recover all measures of actual damages allowable under the law as set forth in this petition;

c. That Plaintiff recover punitive and exemplary damages to the fullest extent permitted by law;

d. That Plaintiff recover penalties or fines authorized by law;

e. That Plaintiff recover interest, costs, and expenses as authorized by law;

f. That Plaintiff recover its attorneys' fees and all related costs of litigation;

And for such other and further relief to which Plaintiff may show itself entitled, at law or in equity.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

*/s/ Matthew R. McCarley* (Lead Counsel)
Matthew R. McCarley
Texas Bar No. 24041426
mccarley@fnlawfirm.com

Bryan Fears
Texas Bar No. 2400886
fears@fnlawfirm.com

Majed Nachawati
Texas Bar No. 24038319
mn@fnlawfirm.com

FEARS NACHAWATI, PLLC





DISTRICT COURT T E X A S JOHNSON COUNTY

4925 Greenville Avenue, Suite 715
Dallas, Texas 75206
Tel. (214) 890-0711
Fax (214) 890-0712

Scotty MacLean (Local Counsel)
Texas Bar No. 00787942
smaclean@macleanfirm.com

**MACLEAN LAW FIRM, P.C.**
4916 Camp Bowie Blvd.
Fort Worth, Texas 76107
Tel. (817) 900-3897
Fax (817) 698-9401

Matthew S. Daniel
Texas Bar No. 24047575
mdaniel@lawyerworks.com

**FERRER POIROT & WANSBROUGH**
2603 Oak Lawn Ave. Ste. 300
Tel. (214) 521-4412
Fax (866) 513-0115

ATTORNEYS FOR THE PLAINTIFF
JOHNSON COUNTY

CERTIFIED COPY CERTIFICATE
STATE OF TEXAS – COUNTY OF JOHNSON
I HEREBY CERTIFY THAT
THE ABOVE IS A TRUE AND CORRECT COPY OF
THE ORIGINAL RECORD ON FILE IN MY OFFICE
DAVID R. LLOYD
DISTRICT CLERK – JOHNSON COUNTY, TEXAS
DATE Nov 17, 2018
BY Steve Harrison DEPUTY








I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this February 28, 2019

Certified Document Number: 83030632 Total Pages: 30

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**